IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**TERRY WEAVER,**
    Petitioner,

v.                                                    Case No. 5:05cv46/LAC/MD

**JAMES R. MCDONOUGH,**
    Respondent.
_____

## REPORT AND RECOMMENDATION

Before the court is a second amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 13). Respondent has filed a response (doc. 28), providing relevant portions of the state court record (docs. 31 & 41). Petitioner has replied (docs. 35). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY[1]

During the night or early morning of April 15, 1999 Stephanie Campbell woke to find the petitioner, her former boyfriend, standing over her as she slept in her apartment. He told her he wanted to talk, so they went downstairs to her living room and sat on a love seat or couch. Petitioner told her he wanted her to return to him, but she would not agree to do so. Petitioner then asked for some water, and when Ms. Campbell went into the adjacent kitchen to get water from her refrigerator petitioner stabbed her in the back with a knife. The blade broke off in Ms. Campbell's body. She tried to scream but her lungs had collapsed. She pounded on the wall to alert her sister, who was sleeping upstairs. When her sister arrived from upstairs Ms. Campbell told her that the petitioner had stabbed her, and asked her to call 911. The knife blade not only collapsed her lungs but pierced her aorta and heart. She was taken to the hospital where surgery was performed to remove the knife blade and repair her lungs, aorta and heart. Ms. Campbell survived the ordeal, and was later able to testify at a preliminary hearing and at trial.

A preliminary hearing pursuant to Fla. R. Crim. P. 3.133(b) was held on August 10, 1999, at which petitioner was represented by counsel. Ms. Campbell testified at the hearing substantially as set out above, and the court found probable cause. Petitioner subsequently sought leave to represent himself, which request was granted, and the case was tried to a jury. Petitioner was found guilty of attempted second degree murder and was sentenced to fifteen years in prison. His appeal was unsuccessful, other than for reconsideration concerning credit for time served, not relevant here. He sought state habeas relief for ineffective assistance of appellate counsel but was likewise unsuccessful.

Petitioner then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, raising the same grounds raised here (and one other). The trial

---

[1]The facts stated herein are those presented at the preliminary hearing and at trial and viewed in the light most favorable to the prosecution. Where there are conflicting inferences and disputes exist, this court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution. Martin v. State of Alabama, 730 F.2d 721,724 (11th Cir. 1984). Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented plays a major part in the court's analysis.

*Case No: 5:05cv46/LAC/MD*

court denied relief in a written order without a hearing, finding that petitioner's ineffective assistance of counsel claim (Ground 1 here) was insufficient to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that the remaining grounds (including Grounds 2, 3, and 4 here) did not show fundamental error and were therefore procedurally barred because they were either raised on direct appeal or could have been, but were not (doc. 41, ex. M, p. 118).[2] Petitioner's appeal of the order denying post-conviction relief was unsuccessful, and he now seeks federal habeas relief. Respondent concedes that petitioner's federal petition is timely.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

---

[2] Hereafter all references to exhibits will be to doc. 28 unless otherwise noted.

*Case No: 5:05cv46/LAC/MD*

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring). Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable. More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer*, 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a

context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court).

PETITIONER'S GROUNDS FOR RELIEF

**Claim 1. <u>Ineffective assistance of counsel - probable cause hearing.</u>**

For his first ground for relief, petitioner contends that his attorney was constitutionally ineffective in failing to effectively cross-examine the victim witness at the preliminary hearing, and in failing to call police officers whose testimony would have contradicted that of the victim. The respondent concedes that this claim was fully exhausted in the state courts.

A. Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*). In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314. "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994). In evaluating the reasonableness

of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

###   B.   Federal Review of State Decision.

The trial court held that petitioner could not meet either of the *Strickland* prongs.   The trial court was correct.   Petitioner pins his claim on alleged inconsistencies in when, how and by whom he was identified by the victim, Ms. Campbell, as the assailant.  It is not necessary to detail the specifics of all the inconsistencies, because none of them make a legal difference.[3]  In essence, petitioner argues that because the victim's lungs were collapsed she could not scream out during and after the attack, and could not talk, so she could not identify her assailant.  Petitioner points to police reports that say Ms. Campbell identified the petitioner on the night of the crime (ex. A, pp. 87-89), but also points to a statement Ms. Campbell later gave to the effect that when the police and medical personnel arrived, she could not talk because her lungs had collapsed (ex. A, p. 91).  Also, Ms. Campbell's sister gave a statement that she was awakened by Ms. Campbell's screams (ex. A, p. 108), while at the preliminary hearing Ms. Campbell said that she could not scream, but that she did tell her sister that petitioner had attacked her (ex. A, pp. 263, 268).  The victim's sister told the police that the victim identified petitioner to her, and at least two police reports indicate that the victim identified the petitioner to law enforcement, all of which petitioner says would have been impossible if Ms. Campbell's lungs were collapsed.  Petitioner faults his attorney for not making an issue of these inconsistencies.

Petitioner cannot satisfy either *Strickland* prong.   Counsel's alleged ineffectiveness and any alleged prejudice go hand in hand.  Counsel's performance did not fall below an objective degree of reasonableness, because counsel's arguing the inconsistencies as petitioner urges would not have made a difference at the preliminary hearing.  The victim testified at the preliminary hearing, and she identified the petitioner as her attacker (ex. A, pp. 263-69).  That was sufficient by

---

[3]In truth it is somewhat difficult to examine the alleged inconsistencies in detail because the allegedly inconsistent statements (apparently part of the investigative file produced in discovery) were not used at trial, and some are not in the transcript here.  Petitioner has attached bits and pieces of various statements to some of his filings, but the only complete transcripts are from court proceedings.

itself to establish probable cause. Ms. Campbell testified that after she was stabbed she couldn't scream but beat on the wall to alert her sister, who was sleeping upstairs (ex. A, p. 264). Her sister came downstairs and Ms. Campbell told her that petitioner had stabbed her, and asked her to call the police (Ex. A, p. 268). Whether Ms. Campbell screamed or did not scream, and whether she immediately told her sister, or the police, that the petitioner was her attacker went to the weight of her testimony. These inconsistencies could have been, and were, used to try to convince the jury that there was reasonable doubt about petitioner's guilt, but that is not the standard at a probable cause hearing.

"[P]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329, citing, *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, citing, *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

At a preliminary hearing the judge needs only to be convinced that there is probable cause. This court rejects the idea that for the purpose of finding probable cause it necessarily made a difference whether the victim screamed or beat on the wall, or whether she identified the petitioner to her sister, a uniformed policeman, a detective, an ambulance attendant or hospital personnel, or at what time or in what order the identification was made. This incident occurred in the middle of the night, the victim was horribly, almost fatally, injured, and there was fear, haste and confusion - all the elements necessary to make witnesses remember things out of sequence. For purposes of a probable cause finding, it makes little difference when and how the victim identified the petitioner as her assailant, because she identified

the petitioner and no one else, both at or around the time of the incident, and under oath in open court. Petitioner does not suggest that the victim ever identified anyone else, nor does he indicate that there was anyone else to identify. Petitioner points to inconsistencies in the record on who told what to whom and when, but none of those inconsistencies even remotely point to anything other than that there was probable cause to believe that the petitioner attempted to murder the victim. The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

**Claims 2 and 3.     Trial Court Error.**

Petitioner's second and third claims raise issues of what petitioner terms fundamental trial court error. They also overlap to a great degree, and are discussed here together for clarity. In essence, petitioner contends that the court should not have "allowed" the victim to change her testimony from "I screamed" to "I beat the wall." Petitioner further contends that the trial court erred by "allowing" mistakes in the arrest and search warrants. Ms. Campbell gave a report to the police that after she was stabbed she could not talk (ex. A, p. 107). This is important, says petitioner, because it made a difference in the preliminary hearing, and in the issuance of an arrest warrant. He also says that the arrest warrant was invalid because it was sworn to at a time when the victim could not talk, and its statement that she had identified the petitioner as the assailant was false.

Respondent contends that these claims were not properly exhausted in the state court system. It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the

correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan, supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734. This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). However, a petitioner may obtain federal review of his claim if the state procedural rule is applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair

---

State; or

    (B) (i) there is an absence of available State corrective process; or

    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Petitioner raised these two claims of trial court error in his motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 (doc. 41, ex. M, pp. 11-12). The Rule 3.850 court found that these claims were procedurally barred because they either were raised on direct appeal or could have been raised there but were not (id., p. 118). The record confirms that the two claims were not raised on direct appeal.[5] The

---

[5] Petitioner raised the following two claims on direct appeal:

1. The trial court reversibly erred when it denied appellant's request for standby counsel and allowed appellant to represent himself.

Case No: 5:05cv46/LAC/MD

state court's imposition of a procedural bar was a classic application of Florida's procedural default rule which precludes review by the Rule 3.850 court of claims that could have been, but were not, raised on direct appeal. *Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla. 1995) (reiterating the well-established rule in Florida that "issues that could have been, but were not, raised on direct appeal are not cognizable on collateral attack") (citing *Johnson v. State*, 593 So.2d 206 (Fla. 1992)). These claims are therefore procedurally defaulted in this court. Petitioner has made none of the requisite showings to excuse his default; therefore, federal review is not available.

Even if the procedural bar did not apply, petitioner's claims are without merit. The victim testified at the preliminary hearing that she beat on the wall to alert her sister, but that she did not scream because her lungs were collapsed. Again, the court did not "allow" the victim to "change" her testimony, because this was the first time she had testified under oath. At trial the victim's testimony was substantially the same. Petitioner cross-examined her at length on when she told the police that he had attacked her, and she stuck to her testimony - that her lungs were collapsed and she could not scream but she could talk. However much the petitioner might disbelieve Ms. Campbell's testimony does not change the result. The jury believed Ms. Campbell and the inconsistencies upon which petitioner relies did not sway it. What had an obvious effect on the outcome of the case was Ms. Campbell's response to petitioner's repeated attempts to have her explain the inconsistencies:

> I know what you did and I know what I said to the police. I don't care what you sit here and say or how you switch it up or how you want to say it. You did this, Terry, and you ain't going to get out of it. Don't make no difference if I screamed or hollered, whatever, it still –

(Ex B, p. 102).

Petitioner also attacks the arrest warrant, claiming that the police lied in the affidavit by saying that the victim told them that petitioner had stabbed her.

---

2. The trial court reversibly erred when it sentenced appellant to 15 years in prison upon his conviction for attempted second degree murder, without properly awarding him credit for the 374 days he had previously served in jail on that offense.

(Doc. 31, ex. D, p. i.).

*Case No: 5:05cv46/LAC/MD*

**Petitioner says this cannot be true. What petitioner ignores is what happened later when the case was tried. The victim testified at the preliminary hearing, but she was never asked if she talked to the police the night of the attack. At trial petitioner pointed to Ms. Campbell's earlier statement, in which she stated that on the night of the incident she could not talk and did not tell the police who had stabbed her (ex. B, p. 100). At trial she testified that she told both her sister and the police that petitioner had stabbed her. Later she reconfirmed that she told her sister, and that her sister may have been the one who told the police (ex. B, p. 101). Petitioner says all this makes a difference. He points to the police report that disagrees with the victim's trial testimony, and asks this court to disregard the trial testimony and accept the earlier statement. If that is accepted, he argues, the victim did not tell the police who had attacked her until after he was arrested, but the arrest warrant application said she had already told them. Therefore the arrest warrant application contained misrepresentations and the warrant was invalid. This argument is totally without merit. Petitioner hangs his argument on a statement that was later effectively recanted at trial. The jury accepted the later version.**

**The state court's ruling that these claims were procedurally defaulted was correct. Had the issues been properly presented for resolution by the state court, and denied, petitioner would still not be entitled to relief. Petitioner is not entitled to federal habeas relief, and the writ should not issue.**

**Claim 4.   <u>Denial of pre-trial motions.</u>**

**Finally, petitioner contends that the trial court committed fundamental error in denying his numerous pre-trial motions. The Rule 3.850 court held that this claim was procedurally barred because the issue could have been raised on direct appeal, but was not (doc. 41, ex. M, p. 118). As with the previous claims, the record confirms that this issue was not raised on direct appeal. The Rule 3.850 court rejected this claim on the independent and adequate state ground of procedural bar. Therefore, it is considered procedurally defaulted in this court. Petitioner has made none of the requisite showings to excuse his default. Therefore, this court should not review it.**

If it were not barred, it would be found to be without merit. Petitioner argues that his motion attacked the court's probable cause finding and the propriety of the arrest and search warrants. The probable cause matter finding was correct, and there was no basis for attacking the arrest warrant, as discussed above. As to the search warrant, the only items introduced into evidence at trial were the knife blade, which was in the victim's back, and the knife handle, which was found on the victim's couch. Those items were obtained with the victim's permission at the crime scene, without the necessity of a search warrant. A search warrant was issued for the search of petitioner's home, but nothing that was found there was used at trial. Consequently, any error in issuing the search warrant (and petitioner makes the same argument he made above on the arrest warrant, which the court rejects), was irrelevant. The state court's ruling that these claims were procedurally defaulted was correct. Had the issues been properly presented for resolution by the state court, and denied, petitioner would still not be entitled to relief. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## CONCLUSION

Petitioner has failed to show that he is entitled to federal habeas relief on any of his legal grounds. All such grounds are either without merit or are procedurally barred, or both.

Accordingly, it is respectfully RECOMMENDED that the second amended petition for writ of habeas corpus (doc. 13), challenging the conviction and sentence in the case of *State of Florida v. Terry Weaver*, in the Circuit Court of Bay County, Florida, case no. 99-1004, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 6th day of July, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636;** *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).